79 F.3d 1149
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory C. WILLIAMS, Defendant-Appellant.
 No. 95-3345.
 United States Court of Appeals, Sixth Circuit.
 March 13, 1996.
 
 Before: KEITH, MARTIN, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction on charges of attempted carjacking resulting in a death, attempted carjacking, and using a firearm in relation to a crime of violence. On appeal, the defendant argues (1) that hearsay statements made by a co-conspirator were admitted into evidence improperly, (2) that the trial judge made improper and prejudicial statements, and (3) that the evidence was insufficient to support the attempted carjacking charges. Finding none of these arguments persuasive, we shall affirm the conviction.
 
 
 2
 * On the evening of March 22, 1994, just before 11 p.m., police officers discovered the body of William Glass in his car on South Ohio Avenue in Columbus, Ohio. Mr. Glass had been shot through the car window with a shotgun.
 
 
 3
 Later that same evening, April Clark was riding in a car driven by her boyfriend, Joseph Jeffries, in the same area. The car stopped at a red light behind another car, and two men--identified at trial as defendant Gregory Williams and Demond Taylor--approached. Mr. Williams, who was carrying a shotgun, went to the first car, and Mr. Taylor went to Ms. Clark's car and pointed a handgun at the window. Mr. Jeffries attempted to speed away, whereupon the windshield of the automobile was hit with a shotgun blast. The occupants were not injured.
 
 
 4
 Based upon Ms. Clark's description and later photo identification of the man with the shotgun, the police were able to identify him as Mr. Williams. Upon his arrest, Mr. Williams told the police that he had nothing to do with the crimes and that Mr. Taylor was responsible.
 
 
 5
 A friend of Mr. Williams told the police that he had allowed Williams to leave a shotgun at his former girlfriend's house. The shotgun was recovered by police. A firearms expert testified at trial that a shell recovered from the Clark crime scene had been fired from this weapon. In addition, the expert testified that pieces of shotgun wadding removed from Ms. Clark's car and from Mr. Glass' body were manufactured by the same company that made the shells in Mr. Williams' weapon.
 
 
 6
 Martia Featherstone and Andre Richards testified that they had spent the evening of March 22 with Mr. Williams and Mr. Taylor and several other individuals watching movies, drinking alcohol, and smoking marijuana at a house in Columbus. The two witnesses indicated that a sawed-off shotgun and an inoperative handgun were in the house that evening; that Mr. Williams and Mr. Taylor left the house on two occasions; that upon their return on the second occasion they were out of breath; and that Mr. Williams left and arrived with the shotgun.
 
 
 7
 They also testified to several inculpatory statements made by Mr. Williams and Mr. Taylor. Before the men left on the first occasion, the witnesses heard Mr. Taylor say that they were going to get money for "weed and drinks" and that they "were going to do a jack." According to Mr. Richards, Mr. Williams responded "aw right."
 
 
 8
 Mr. Richards also testified that Mr. Williams later said that they had shot at a car, and that Mr. Taylor had said "you should have seen how his head was blew off." Ms. Featherstone testified that Mr. Taylor had bragged "we blasted those fools."
 
 II
 
 9
 The defendant argues that the trial court improperly admitted Mr. Richards' statement that Mr. Taylor had said that "they were going to do a jack." Ordinarily, before introducing the hearsay statement of a co-conspirator to implicate a defendant, the prosecution must show by a preponderance of the evidence (1) that a conspiracy existed; (2) that the defendant against whom the hearsay is offered is a member of the conspiracy; and (3) that the hearsay statement was made in the course and in the furtherance of the conspiracy. United States v. Enright, 579 F.2d 980, 986 (6th Cir.1978). Here, however, defendant Williams made no objection to the statement at trial. Because no objection was raised, the defendant must demonstrate plain error.
 
 
 10
 The admission of the hearsay statement of a co-conspirator does not constitute plain error where there is sufficient evidence, in addition to the hearsay statements, for the jury to find a conspiracy. United States v. Samour, 9 F.3d 531, 536 (6th Cir.1993). The evidence in the case at bar showed that Mr. Williams and Mr. Taylor left together and returned together from each of the attempted carjackings; that two assailants had menaced Ms. Clark's automobile; and that Ms. Clark was able to identify one of the men as Mr. Williams. In addition, Mr. Williams stated that "they" had pointed a shotgun through a car window and shot at a car. Under these circumstances, we are satisfied that the admission of the testimony in question was not plain error.[1]
 
 III
 
 11
 The defendant also contends that in two situations the trial judge asked questions that jeopardized his right to a fair trial. The first situation arose after Mr. Richards had testified that Mr. Taylor had said that "they were going to do a jack." The prosecution asked Mr. Richards to explain "a jack," and the following exchange took place:
 
 
 12
 "A. ... just means like going and take some money.
 
 
 13
 THE COURT: Take somebody?
 
 
 14
 THE WITNESS: Take some money.
 
 
 15
 THE COURT: What do you understand jack to mean?
 
 
 16
 THE WITNESS: A jack?
 
 
 17
 THE COURT: Yes.
 
 
 18
 THE WITNESS: It means like you go rob or take some money from somebody, like a robbery, a jack.
 
 
 19
 THE COURT: Do you understand it to mean they would hold somebody up in their car and take their car away from them?
 
 
 20
 THE WITNESS: Yes.
 
 
 21
 THE COURT: Why didn't you say that if that's what you understand?
 
 
 22
 THE WITNESS: That's what I said, a jack. That's what it means. That's what I'm saying.
 
 
 23
 Q. [The Prosecutor] Mr. Richards, was there--
 
 
 24
 THE COURT: Just a minute. Why are you standing?
 
 
 25
 MR. ROSENBERG: Because I object to the Court's questions.
 
 
 26
 THE COURT: Your objection is vehemently overruled." (Transcript Vol. II at 194-195.)
 
 
 27
 A trial court enjoys considerable discretion "to question witnesses to clarify and develop facts." Ralph v. Nagy, 950 F.2d 326, 330 (6th Cir.1991). The trial court did not abuse that discretion here.
 
 
 28
 The second situation arose after Ms. Clark, testifying on direct examination, had identified Mr. Williams as her assailant. Upon cross-examination, defense counsel asked if she knew Mr. Williams. She replied that she did not, and had "never seen him" before. The court interjected "you saw him the night of the shooting, didn't you?" Understood in the context of Ms. Clark's previous testimony, it is obvious that the court's interjection was simply an attempt to allow Ms. Clark to clarify that she meant that she had not seen Mr. Williams other than in connection with the shooting. The court's question was not improper.
 
 IV
 
 29
 Mr. Williams also argues that the evidence was insufficient to convict him on either of the attempted carjacking counts of the indictment. In reviewing a challenge based on the sufficiency of the evidence, this court "views the evidence in the light most favorable to the prosecution" and will uphold the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In regard to the Glass automobile the defendant argues that there was no evidence linking him to the crime, and that even assuming such evidence, there was no evidence that he intended to take the car. Clearly, however, the evidence linked Mr. Williams to the shotgun used in the shooting. When combined with the other evidence, this was sufficient to justify a rational jury in concluding that Mr. Williams shot Mr. Glass. Mr. Taylor's statement of intent to commit a carjacking, to which Mr. Williams expressed agreement, was sufficient to show that they intended to take the car.
 
 
 30
 In regard to the second attempted carjacking Mr. Williams argues that the evidence shows that he stayed by the first car and did not approach Ms. Clark's car. The prosecution demonstrated, however, that a shotgun was fired at the Clark automobile and that Mr. Williams was the only one carrying a shotgun. Based upon these facts, in combination with the other evidence, a reasonable jury could have convicted Mr. Williams of the second carjack attempt.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 Furthermore, it is far from clear that this testimony would not be independently admissible under the state of mind exception to the hearsay rule. Based upon the testimony of Mr. Richards, the trial judge could have found that Mr. Williams adopted Mr. Taylor's statement of present intent as his own. Federal Rule of Evidence 803(3) specifically excepts from the hearsay rule "[a] statement of declarant's then-existing state of mind ... (such as intent ...)...."